UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WILLIE "EARL" OSBEY,

    Plaintiff,

v.  05-3276

HEALTH PROFESSIONALS LTD., et al.,

    Defendants.

## Case Management Order #1

The court is required by 28 U.S.C. §1915A to conduct a merit review of the plaintiff's Complaint, and through such process to dismiss any legally insufficient claims, or the entire action if warranted.

The merit review standard is the same as a motion to dismiss standard. *Pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). The allegations are taken as true, and a claim can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521.

*Allegations and Analysis*

I. Eighth Amendment: Deliberate Indifference to Serious Medical Needs

    A. Allegations

In January, 2003, the plaintiff was incarcerated in Cook County Jail. He noticed an open sore on his left thigh, which was oozing and draining. The Cook County doctor did some blood tests and, based on the results, referred the plaintiff to a bone specialist. While the plaintiff was waiting to see the specialist, he developed a high fever and was emergently transferred to Cook County Hospital, where he remained for two months. The bone specialist at Cook County Hospital informed the plaintiff that the rod placed in his left femur 13 years prior (as a result of a gunshot wound) was infected. The bone specialist surgically removed the rod and replaced it with a cement rod.

In July, 2003, the plaintiff pled guilty and was sentenced to the IDOC. He began serving his sentence in Dixon Correctional Center, which is when he began noticing problems with his left leg again–the oozing sores had reappeared. He put in a request for sick call, but was transferred to Lawrence Correctional Center ("Lawrence") the next day.

At Lawrence, on or about July 20, 2003, defendant Dr. Gonzales examined the plaintiff's wound and directed the plaintiff to change his dressings twice a day and apply antibiotics to the sore. Plaintiff complied until December 19, 2003, when he was transferred to the Westside Work Release Center. There, he secured a day pass to visit the bone specialist who had performed the surgery. The bone specialist concluded that the new cement rod had become infected. The specialist told the plaintiff that the plaintiff needed additional, urgent surgery to remove the rod and any bullet fragments, and debridement of the infected area. The specialist warned the plaintiff that his condition was serious, even life-threatening, without surgery.

A surgery date was set. Unfortunately, the plaintiff did not receive it because he was arrested on alleged parole violations on or around July 16, 2004, and incarcerated again in Lawrence Correctional Center.

On his arrival at Lawrence, the plaintiff informed defendants Dr. Gonzales, Brian (HCU administrator), Pulley (assistant warden) and Garnett (warden) of his serious medical need for urgent surgery. These defendants repeatedly denied him medical care, instead punishing him for his complaints by placing him in segregation. Defendant Gonzales refused to refer the plaintiff to a specialist or obtain his medical records from Cook County Hospital. She allegedly said something to the effect that, "Maybe surgery would have benefitted you, but you chose to commit crimes and come to prison, which prevents you from having this surgery. HPL is not going to pay for your surgery anyway." Gonzales instead resumed the ineffective treatment of dressing changes twice daily and antibiotic ointment. As a result, three additional sores developed, oozing green and yellow and his whole left leg became massively swollen, causing him extremely severe, chronic pain.

After repeated complaints and calls from his family, defendant Gonzales saw the plaintiff again on September 28, 2004. She incised the sores; large amounts of green and yellow pus drained. Plaintiff asked Gonzales and Brian to get his Cook County Hospital records to confirm his need for urgent surgery. Eventually, those records were obtained, but the surgery was still denied. In December, 2004, Dr. Gonzales left Lawrence, and defendant Dr. Julien took her place as acting medical director. Dr. Julien continued the same ineffective treatment, also denying the surgery or an appointment outside. The delay caused the plaintiff's osteomyelitis to worsen and forced the plaintiff to endure severe and chronic pain.

On or about April 8, 2005, HPL replaced Dr. Julien with Dr. Fatoki (not a defendant), as acting medical director of Lawrence. Dr. Fatoki took action. He ordered x-rays and, on April 15th, recommended the plaintiff be evaluated by an orthopedic surgeon. On April 18th, Dr. Fatoki requested the plaintiff be transferred for urgent surgery to remove the rod and bullet fragments. HPL approved the surgery and Brian then approved the medical furlough. Dr. Gray (an outside surgeon and not a defendant) performed the surgery and debridement on May 25, 2005. However, some of the hardware from the rod had apparently become incorporated into the bone, with the bone healing over the top of a wire. Dr. Gray chose not to risk taking the bone down in order to remove the wire, though leaving the wire there increased the risk of infection.

Four days later, the plaintiff's leg started oozing pus again. The plaintiff was taken back to Dr. Gray, who agreed that the plaintiff should be referred back to Cook County Hospital, where the plaintiff's original surgery had been performed, and recommended a second opinion, as well as a consultation with an infectious disease specialist. Dr. Gray conceded that the infection was likely caused by the hardware still incorporated in the plaintiff's bone, but explained that he had left it there because he was not familiar with it. Dr. Gray told the plaintiff his condition was serious, and that he still had an urgent need for yet another surgery.

Because Dr. Fatoki had ordered expensive surgery (cutting into HPL's profits and bottom line), HPL replaced Dr. Fatoki with Dr. Lofton as acting medical director of LCC, shortly after the plaintiff had the surgery.

In August, 2005, the plaintiff was transferred to Pinckneyville Correctional Center. Things did not improve for the plaintiff at Pinckneyville. Despite his grievances and complaints, he did not and has still not received the surgery he needs to treat the infection in his leg. He says his condition is rapidly deteriorating, with massive swelling, excruciating pain, and substantial amounts of yellow and green pus drainage. He describes chronic pain that severely limits his daily activities, and believes he is at a risk for permanent disfigurement and or a life-threatening situation. The Pinckneyville defendants he accuses of deliberate indifference are Wexford Health Sources, Dr. Feinerman (medical director), Christine Brown (health care administrator), Julius Flagg (assistant warden), and John Evan (warden).

The plaintiff alleges that defendant Walker (IDOC director) and other IDOC officials have established and/or encouraged a policy to "deliver only nominal health care to IDOC inmates, through private providers, at the cheapest possible cost, knowing that the rights of inmates such as plaintiff with serious medical [needs] . . . will be violated in the process." (Complaint, p. 4P). The policy is to punt the responsibility for inmate care to private providers, "knowing full well that these providers have a profit interest in 'cutting corners' on the provision of medical services, and will therefore violate the rights of inmates . . . with serious medical needs." *Id.*

The plaintiff seeks to be seen urgently to be seen by an infectious disease specialist, and for surgery remove all the hardware and bullet fragments from his left femur by an orthopedic surgeon at Cook County Hospital. He also seeks damages.

    B.  Analysis

The plaintiff states an Eighth Amendment claim for deliberate indifference to his serious medical needs against all the defendants, except for defendants IDOC and Lawrence Correctional Center, who are not proper defendants in a 42 U.S.C. Section 1983 action. *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir.1999) ("states and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983")  This is just housekeeping here, since defendants Walker and Garnett (Lawrence's warden) are already sued in their official capacities, the functional equivalent of suing the IDOC and Lawrence. IDOC and Lawrence remain in on

the plaintiff's claims regarding the Rehabilitation Act and the Americans with Disabilities Act.

An inference certainly arises that the plaintiff's medical needs are serious. As to whether the defendants were deliberately indifferent, the court needs a thoroughly developed factual record to draw conclusions about exactly what the plaintiff's condition is, the appropriate range of treatments for that condition, and what each defendant knew and did or had the authority to do about the plaintiff's condition. Some of the defendants are non-medical personnel who may bear no personal responsibility for the plaintiff's lack of treatment, as they are generally entitled to rely on the professional expertise of doctors. *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)("'If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'")(quoting 3rd Circuit case with approval). Additionally, prison officials cannot be liable under 42 U.S.C. Section 1983 for the misdeeds of their subordinates just because they are in charge of running the prison. However, it would be premature to rule out the personal involvement of the non-medical defendants at this stage.[1] Similarly, the evidence may show that the defendants were not deliberately indifferent but that the plaintiff has a complicated and recalcitrant condition not subject to easy resolution (two surgeries have failed to correct the problem thus far). That decision must also await a developed record.

Wexford and HPL, though private contractors, can be held liable under Section 1983. Private corporations acting under color of state law are treated as municipal entities for purposes of 42 U.S.C. Section 1983. *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n. 6 (7th Cir. 2002). Liability attaches if 1) an express policy caused the constitutional deprivation; 2) a widespread practice existed "so permanent and well-settled as to constitute a custom or usage within the force of law"; or 3) a person with "final policy-making authority" caused the constitutional deprivation. *Billings v. Madison Metropolitan School Dist.*, 259 F.3d 807, 816 (7th Cir. 2001), *citing McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The plaintiff alleges a policy of deliberate indifference to inmates' serious medical needs. He accordingly states a claim against these private corporations and the other defendants in their official capacities.

II. Retaliation For Filing Grievances

The plaintiff alleges that defendants Dr. Gonzales, Dr. Julien, Nurse Hollingsworth, Maggie Brian (health care administrator) and Correctional Officer Waltz subjected him to a continuous pattern of calculated retaliation because of his grievances about his need for medical treatment, which included falsifying his medical records to show that he refused treatment, a false disciplinary report, and disciplinary segregation .

Acts which are constitutional can become unconstitutional if done in retaliation for the

---

[1]There is no malpractice claim before the Court, as the plaintiff does not allege malpractice, and, in any event, has not attached the physician's report and affidavit required by 735 ILCS 5/2-622.

exercise of a constitutionally protected right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted). "This is so even if the adverse action does not independently violate the Constitution." Retaliation for filing grievances has long stated a claim under § 1983. *See Johnson v. Stovall*, 233 F.3d 486, 489 (7th cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

### III. Rehabilitation Act and Americans with Disabilities Act

The plaintiff alleges that IDOC and Lawrence Correctional Center have a policy of intentionally discriminating against disabled persons like himself (he is wheelchair bound), by not providing meaningful access to the gym room and weightlifting areas at Lawrence Correctional Center. He alleges this violates the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, that he is a qualified individual thereunder, and that the IDOC and Lawrence receive federal funds.

The plaintiff's RA claim may proceed at this point for further fleshing out. This court also construes an action under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"). Both the RA and the ADA apply to state prisoners. *Cassidy v. Indiana Department of Corrections*, 199 F.3d 374, 375 and fn.1 (7th Cir. 2000)("chief difference between the ADA and the Rehabilitation Act is that claims under the latter require that the entity being sued receive federal funding."). The Supreme Court recently held that a prisoner may, under certain circumstances, seek damages for violations of Title II of the ADA. *United States v. Georgia*, 2006 WL 43973 (2006). The court acknowledges that the Complaint does not reference the ADA, but the plaintiff does not need to cite legal statutes at this point, and his reference to the Rehabilitation Act lends itself to a reasonable inference that he may also have a claim under the ADA.

### IV. Access to Court

The plaintiff alleges that defendant Walker intentionally hindered his ability to exhaust his administrative remedies by either not responding to the plaintiff's appeals of his grievances, or by declaring those appeals untimely. The plaintiff alleges that this behavior interfered with his access to court, because he must exhaust his administrative remedies before filing suit.

It is true that the Prison Litigation Reform Act requires an inmate to exhaust available administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(a)("[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted."). The key word here is *available* remedies. If defendant Walker did prevent the plaintiff from timely appealing any of his grievances, the plaintiff would not have administrative remedies available to him, and he could proceed directly to court. An inmate who is denied an opportunity to comply with grievance procedures has not failed to exhaust his claim, and therefore his claim cannot be dismissed on exhaustion grounds. *Carroll v. Yates,* 362 F.3d 984, 985 (7th Cir. 2004). Taking the plaintiff's allegations as true, therefore, Walker's hindrance

of plaintiff's ability to exhaust could not have prevented the plaintiff from filing this lawsuit.[2] This claim will accordingly be dismissed for failure to state a claim.

IT IS THEREFORE ORDERED:

1)    Pursuant to its merit review under 28 U.S.C. Section 1915A, the court finds that the plaintiff states the following federal claims:

A) All the defendants violated and/or are violating the plaintiff's Eighth Amendment rights through deliberate indifference to his serious medical needs, except for Defendants IDOC and Lawrence Correctional Center, which are not proper defendants in a 42 U.S.C. Section 1983 action.

B) Defendants Dr. Gonzales, Dr. Julien, Nurse Hollingsworth, Maggie Brian (health care administrator) and Correctional Officer Waltz retaliated against the plaintiff for filing grievances.

C) Defendants IDOC and Lawrence Correctional Center violated the plaintiff's rights under the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

2)    Pursuant to its merit review under 28 U.S.C. Section 1915A, the court dismisses the plaintiff's access-to-court claim against defendant Walker for failure to state a federal claim.

3)    This case shall proceed solely on the federal claims identified in paragraph one above. Any claim not set forth in paragraph one above shall not be included in the case, except in the court's discretion on motion by a party for good cause shown, or pursuant to Federal Rule of Civil Procedure 15.

4)    In light of the serious nature of the plaintiff's allegations and his request for a preliminary injunction, the Court believes it prudent to expedite service. Accordingly, a Scheduling Order is directed to enter granting *in forma pauperis status*, subject to receipt of the plaintiff's trust fund ledgers. A prepayment order shall enter upon receipt of the trust fund ledgers.

5)    The clerk is directed to complete summons and service forms for the defendants

---

[2] "On the other hand, "[e]xhaustion presupposes cooperation with any authorized requirements . . . (citations omitted). . . You cannot refuse to comply with the procedures for exhaustion yet claim to have exhausted." *Carroll v. Yates,* 362 F.3d at 985 (7th Cir. 2004). If the plaintiff did in fact fail to follow the grievance procedures as required, including timely appeal (through no fault of Walker), then his claims will have to be dismissed for failure to exhaust.

and make copies of the complaint for service on them.  The U.S. Marshals are directed to serve a copy of the Complaint, this order, and the scheduling order on the defendants, costs advanced by the U.S.  The parties should be prepared to address the plaintiff's motion for preliminary injunction at the Rule 16 conference that will be scheduled in the Scheduling Order.  The court may schedule an earlier hearing on the preliminary injunction, if necessary.

6) The clerk is further directed to fax this order to Attorney Teresa Powell in Springfield, Illinois, to the Illinois Attorney General's office in Springfield, Illinois, and to the Warden at Pinckneyville Correctional Center.

7) The defendants shall file an <u>answer</u> within the time prescribed by Local Rule.  A motion to dismiss is not an answer.  The answer must be considered a responsive pleading under Federal Rule of Civil Procedure 15(a) and should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Case Management Order.

Entered this <u>17th</u> Day of <u>January</u>, 2006.

                                                         **s\Harold A. Baker**

                                                         HAROLD A. BAKER
                                     UNITED STATES DISTRICT JUDGE