UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WILLIE "EARL" OSBEY,

       Plaintiff,

v.                                             05-3276

HEALTH PROFESSIONALS LTD., et al.,

       Defendants.

## Case Management Order #4

       A hearing by video conference on the plaintiff's *pro se* motion for a temporary restraining order/preliminary injunction was held on May 12, 2006. Plaintiff and Christine Brown (Health Care Administrator) appeared from Pinckneyville. Dr. Feinerman appeared from Menard Correctional Center. Theresa Powell, counsel for Wexford, and Illinois Assistant Attorney General Jason Young counsel for IDOC parties appeared from Concordia in Springfield, Illinois. Robert Vogt, counsel for Health Professionals Ltd, appeared by phone from Chicago.

       The plaintiff has submitted a recommendation, purportedly from Dr. Gray, the surgeon who performed surgery on the plaintiff's leg in May, 2005, that says "Pt: would benefit from a tertiary care facility that includes an infection specialist. Recommend referral. Follow up as needed." (d/e 29, p. 12). That recommendation is dated June 27, 2005. No referral was made (of which the court is aware).

       Dr. Feinerman is the Medical Director at Menard Correctional Center and is the Acting Medical Director at Pinckneyville Correctional Center. He has filed an affidavit stating that the medical records show that the plaintiff has "chronic draining sinus status post ORIF (open reduction internal fixation) femoral fracture left," as diagnosed by a Dr. Shepard on December 13, 2005. He avers that an x-ray was taken and compared to the x-ray from April 2005. Dr. Feinerman concluded that plaintiff did not need to be referred to an orthopedic physician because the x-ray showed the femur was still in the same position. Dr. Feinerman also avers that the x-ray shows that plaintiff may also have chronic osteomyelitis. Dr. Feinerman avers that the risk of surgery outweighs the benefits, and that another surgery would be more diagnostic than curative. The treatment chosen appears to be Cipro, daily cleaning with saline solution and betadine, and antibiotic ointment, but it is not clear if that is the current treatment.

       However, the last date Dr. Feinerman personally examined the plaintiff was July 22, 2005. Additionally, Dr. Feinerman's affidavit does not set forth his medical training or experience with treating conditions like the plaintiff's, nor did his testimony at the hearing. He also does not address why the plaintiff has not been referred to an infectious disease specialist. According to the medical records, Dr. Gonzales was the last doctor to treat the plaintiff for his leg (on January 28, 2006). Those records reflect that the leg was draining and sore–the treatment already prescribed was continued. Neither Dr. Gonzales, Dr. Shepard or Dr. Gray were called as witnesses.

       There is evidence that the plaintiff has not submitted a sick call request for his leg since January, 2006. The plaintiff maintains that he submits a grievance every two weeks, but he admits that filing a grievance is different from submitting a sick call request. On the other hand, it is a fair inference that the plaintiff is not going to be referred anywhere, and that the defendants have pretty well decided that the medical treatment he is receiving is adequate. The court also questions why the prison administrators, in the light of the continued requests by the plaintiff for additional medical consultation, have done nothing.

As the Court expressed at the hearing, it remains "at sea" in this case.  The plaintiff has made a *prima facie* showing that he suffers from a serious, chronic medical need.  Perhaps he presents a difficult medical case that is receiving appropriate treatment.  Perhaps the plaintiff suffers from a chronic infection for which nothing more can be done than is being done.  The plaintiff's physical appearance was not that of a person experiencing pain and suffering, for whatever that lay observation is worth.  On the other hand, he is in a wheelchair and has a chronic leg infection that continually drains, for which he has been taking antibiotics for months with no apparent improvement.  The court had hoped that the hearing today would clear things up, but it was an exercise in wheel-spinning.  The court does not have the specialized knowledge necessary to determine whether the plaintiff is in danger of irreparable harm or what his treatment ought to be; nor have the defendants made an effort to illuminate the situation for the court.

Given the apparent seriousness of the allegations and the lack of clarity in the record,  the court finds it is necessary to appoint an expert pursuant to Fed. R. Evid. 706(a), for purposes of assisting the court in deciding the plaintiff's motion for preliminary injunction.  *See Ledford v. Sullivan*, 105 F.3d 354, 361 (7th Cir. 1997)(court has discretion to apportion costs for court-appointed expert to one side).

IT IS ORDERED THAT:

By May 31, 2006, the parties are directed to show good cause why an expert, either in orthopedics or infectious disease, should not be appointed Fed. R. Evid. 706(a), to inform the court on the plaintiff's current diagnosis, prognosis, and recommended treatment of the plaintiff's condition, and the consequences if that recommended treatment is not followed.  Also by May 31, 2006 the parties shall submit the name of any expert they have agreed shall be appointed by the court.  In the absence of agreement, the court will recruit an expert.  Lastly, the defendants shall show good cause why the costs of such expert should not be apportioned to them, in light of the plaintiff's indigence.

Entered this <u>12th</u> Day of <u> May </u>, 2006.

s\Harold A. Baker

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE