UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WILLIE "EARL" OSBEY,

    Plaintiff,

v.          05-3276

HEALTH PROFESSIONALS LTD., et al.,

    Defendants.

## Case Management Order # 6

On May 12, 2006, the Court directed the defendants to show good cause why an expert should not be appointed pursuant to Fed. R. Evid. 706(a)(d/e 66).

In response, the defendants referred the plaintiff to an outside consultant, Dr. Pulisetty, an orthopedic surgeon. The Court delayed the decision on appointing an expert and directed the defendants "to file a report from Dr. McAndrew[1] that addresses the plaintiff's current diagnosis, prognosis, recommended treatment, seriousness of the plaintiff's condition and urgency of recommended treatment (if any), medical consequences to the plaintiff if the recommended treatment is not followed, and need for further consultation with additional specialists, if any." (d/e 74).

*Plaintiff's Consultation with Dr. Pulisetty on June 20, 2006*

The defendants have file a notice of compliance, attaching the report of Dr. Pulisetty. (Ex. 2, d/e 76). Dr. Pulisetty examined the plaintiff on June 20, 2006, at Kenneth Hall Regional Hospital in East St. Louis, Illinois. (Dr. Feinerman Aff., ¶4, d/e 76). Dr. Pulisetty's written report states in pertinent part:

PHYSICAL EXAMINATION:

GENERAL: Moderately built and nourished African American male, in no acute distress.

CHIEF COMPLAINT: Pain and discharge, left thigh.

HISTORY OF PRESENT ILLNESS: this is a 26-year-old African-American male . . . . He was brought with the complaints of 15-year-old gunshot wound to the left thigh with multiple surgeries on the femur. He has noticed recently some seepage from the thigh wound. He has vague pain. He also says from the head injury he has weakness in his spine muscles and he is not able to stand up and walk. This

---

[1]The plaintiff was not taken to Dr. McAndrew, but to Dr. Pulisetty.

he tells me has been going on for several years. He tells me in the prison he does not walk and most of the time he rests. He, however, tells me that his knee, foot and ankle are intact without much problem whatsoever. . . .

EXTREMITIES: The left thigh has multiple scars. Today, there is no discharge. All the scars looked well healed and dry. He has vague pain in the thigh on formal palpation. His range of motion in the hip, knee, foot, and ankle are normal. Muscular strength is normal. Neurovascularly, the left lower extremity is intact.

X-RAYS: . . . The most recent film shows only one [illegible] circumferential metal wire around the midshaft of the femur with only one bullet closely placed. There is no metal in this thigh anymore. No obvious osteomyelitis is evident.

DIAGNOSIS: chronic osteomyelitis with well-healed compound fracture of the femur.[2]

MEDICAL DECISION MAKING: Condition, prognosis, and treatment options were discussed in detail. I do not find any obvious osteomyelitis in the thigh. There is no soft tissue swelling or redness and the bones look normal on x-rays. I would go ahead and do a bone scan to see if there is any activity in the thigh also we will obtain some more fresh x-rays of the femur. Follow up with the above results.

Dr. Feinerman avers that he will approve a bone scan (and, presumably the x-rays) for review by Dr. Pulisetty. (Dr. Feinerman Aff. ¶ 7). Dr. Feinerman further avers that, "In my opinion, no definitive diagnosis, prognosis, or recommended treatment has been recommended by Dr. Pulisetty. Accordingly, I have no definitive information before me to indicate that a change in Mr. Osbey's treatment plan is indicated." *Id.* ¶ 10.

Wexford Health Sources asserts that Dr. Pulisetty is not under its control, but it will attempt to obtain specific information from him following his review of the bone scan. In light of Dr. Pulisetty's report, Wexford objects to the appointment of an expert, to extent costs would be assessed against it, on the grounds that an additional expert is unnecessary.

*Plaintiff's Motion for Preliminary Injunction/Temporary Restraining Order*

Plaintiff seeks urgent surgery to remove alleged infected hardware in his left femur, and treatment/consultation by an infectious disease specialist. (d/e 28, p. 1). He believes that his leg is infected, becoming worse, and that he faces a serious risk of amputation or other life-threatening consequences.

---

[2]Osteomyelitis is defined as an "inflammation of the bone caused by infection . . ." *Dorland's Illustrated Medical Dictionary* (29th Ed.).

2

"A preliminary injunction is an extraordinary remedy that is only granted where there is a clear showing of need." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). "The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits." *American Hospital Assen v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). The initial requirements for granting preliminary injunction are: (1) a reasonable likelihood of success on the merits; (2) the inadequacy of a remedy at law; and (3) the existence of irreparable harm if the injunction is not issued. *Brownsburg Area Patrons Affecting Change v. Patten*, 137 F.3d 503, 507 (7th Cir. 1998). If the plaintiff does not establish all these elements, no preliminary injunction is warranted.

At this point, the plaintiff has not shown a threat of imminent, irreparable harm to his health if the preliminary relief he seeks is not granted. Dr. Pulisetty's report states that the plaintiff's muscular strength is normal, as is his range of motion in the hip, knee, foot and ankle. The plaintiff's pain is reported as "vague" and there was no discharge at the time of examination a few weeks ago. Dr. Feinerman has agreed to approve the bone scan (and presumably the x-rays) and to forward them to Dr. Pulisetty for review. There is no indication in the present record that surgery is needed urgently to prevent irreparable harm. There is also no indication that an infectious disease consultation is needed at the present time. In short, there is no reason on the current record to believe that a preliminary injunction is necessary to maintain the status quo of the parties.

That does not mean the plaintiff has no serious medical needs, or that the injunctive relief he seeks is ruled out. It only means that the record at present does not support the issuance of *preliminary* injunctive relief. The plaintiff's motion will therefore be denied, with leave to renew.

*Motion for Appointment of Counsel*

"There is no constitutional or for that matter statutory right to counsel in federal civil cases-only a statute that authorizes the district judge to request, but not to compel, . . . , a lawyer to represent an indigent civil litigant." *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)(citations omitted); 28 U.S.C. § 1915(e)(1).

The question in determining whether counsel should be requested is: "'Given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?'" *Barnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995)(brackets in Barnes), quoting *Farmer*, 990 F.2d at 322 (7th Cir. 1993). "Although a good lawyer may [do better than a pro se plaintiff], that is not the test, for if it was "'district judges would be required to request counsel for every indigent litigant.'" *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997), quoting Farmer, 990 F.2d at 322.

At this point, on the present record, the court does not believe the case warrants appointed counsel. It is true that plaintiff's medical condition does make the case difficult from

his perspective, at least regarding his Eighth Amendment claim.[3] He has to prove he has a serious medical condition *and* that the defendants were deliberately indifferent to that condition. It is the latter, deliberate indifference, that will likely be the most difficult to prove in the context of this case. Deliberate indifference is more than malpractice or even gross negligence. *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). Deliberate indifference is when a defendant personally knows of a prisoner's serious medical needs and intentionally disregards an excessive risk to that prisoner's health. Deliberate indifference may be inferred "when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Estate of Cole v. Pardue*, 94 F.3d 254, 261-62 (7th Cir. 1996); *see also Collingnon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998)(deliberate indifference may be established if the "response so inadequate that it demonstrated an absence of professional judgment, that is, that nominally competent professional would not have so responded under the circumstances."). The plaintiff can testify to his own pain and limitations, but he will not be able to testify to the range of accepted professional treatment decisions for his condition.

Yet, though the plaintiff's medical condition makes the case more complex, the plaintiff's written submissions thus far show that he understands the applicable legal and factual inquiries. And, as stated before, he will be able to testify to his own pain and limitation, and to how the defendants have responded. He should also have access to his own medical records and to the reports of outside consultants. He should also have personal knowledge of Lawrence's recreational facilities for his RA and ADA claims, and access to the relevant documents for his retaliation claim.

The primary reason for denying the motion, though, is the court cannot conclude at this writing that appointed counsel would make a difference in the outcome of the case. As to his Eighth Amendment claim, by the plaintiff's own allegations, he has had a problem since 2003 and has already received two surgeries, apparently neither of which were successful. Additionally, he did not receive surgery in the seven months during which he was paroled (though it had been scheduled), which also cuts against the alleged urgency of his condition.[4] The affidavit from Dr. Feinerman shows he is receiving medical treatment in the prison, as well as being referred to an outside orthopedic surgeon, Dr. Pulisetty, whose report thus far supports an inference that the plaintiff's condition is not urgent, but stable, not the rapidly deteriorating and dangerous condition described by the plaintiff in his complaint. In short, though the plaintiff's claim of deliberate indifference is sufficient to survive notice pleading, there is not

---

[3]The plaintiff also pursues claims under the ADA and RA, and a First Amendment retaliation claim.

[4]The plaintiff alleges surgery was scheduled but not performed before he was arrested on a parole violation.

sufficient indication of factual merit to warrant the conclusion that counsel might make a difference in the outcome.  As for the ADA/RA claims, the plaintiff's access to the weight lifting and gym room at Lawrence are facts that he can establish on his own.  After that, it is the court's job to apply the law to those facts.  Appointed counsel is not needed to assist the court in that application, at least on the present record.  Lastly, as to the retaliation claim, the record does not show sufficient factual merit to this claim to warrant the appointment of an attorney.

Therefore, the plaintiff's motion for counsel will be denied, with leave to renew.  Future developments may warrant a different conclusion.

IT IS THEREFORE ORDERED THAT:

1) The plaintiff's motion for preliminary injunction/temporary restraining order is denied (d/e 28);

2) The plaintiff's motion for the appointment of counsel is denied, with leave to renew (d/e 2).

3) The court will delay its decision on whether an expert should be appointed until the recommended bone scans and x-rays have been reviewed by Dr. Pulisetty, and Dr. Pulisetty's report and other pertinent evidence addressing the issues in case management #5 have been filed.

4) The defendants are directed to submit a status report on the issues in paragraph three by August 31, 2006, if Dr. Pulisetty's report and other evidence addressing the issues in case management order #5 have not been filed by that date.

5) Pursuant to this Court's order of April 25, 2006 (d/e 53) and Fed. R. Civ. P. 4(m), Defendant Michelle Pulley is dismissed, without prejudice.

6) The docket indicates that defendants Dr. Julien and Hollingsworth have apparently been served, but have not appeared.[5]  The clerk is directed to mail this order, along with docket entries 35 and 36 to Mr. John Brady at Vanochen Lawless Trager & Slevin, 456 Fulton Street, Suite 425, Peoria, Illinois 61602-1250.

7) The court requests that, by July 25, 2006,  Mr. Brady and Mr. Vogt inform the court or clerk whether either of them will be representing Dr. Julien and/or Hollingsworth.

8) No waiver of service has been filed for Dr. Rosalina Gonzales.  By July 27, 2006, the IDOC defendants are directed to provide the clerk with the current work address, forwarding address, or, if neither of those is known, the last-known address of Dr. Gonzales.  This

---

[5]*See* docket entry 35 (Hollingsworth signed waiver); docket entry 35 (executed service form for Dr. Julien).

information shall be used only for obtaining service on Dr. Gonzales.  Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

9) The IDOC has not filed an Answer, but Defendant Walker, the Director of the IDOC, has filed his Answer.  The plaintiff's claims against Walker are reasonably construed as against him in an individual and official capacity (to the extent injunctive relief is sought and to the extent the plaintiff pursues ADA & RA claims).  A claim against Walker in his official capacity is a claim against the Illinois Department of Corrections, which is a claim against the State of Illinois.  Accordingly, the Illinois Department of Corrections is directed to file its Answer within 21 days of the entry of this order.

10) Plaintiff shall disclose expert witnesses and expert testimony pursuant to the requirements of Fed. R. Civ. P. 26(a)(2) by October 31, 2006.

11) The defendants shall disclose expert witnesses and expert testimony pursuant to the requirements of Fed. R. Civ. P. 26(a)(2) by November 30, 2006.

12) Discovery closes January 31, 2007.  The plaintiff's incarceration limits him to written discovery.  Written discovery must be served on a party at least 30 days before the discovery deadline.  Discovery requests are not filed with the court, unless there is a dispute regarding such discovery.  *See* CDIL-LR 26.3.  Motions to compel discovery must be accompanied by the relevant portions of the discovery request and the response.  Additionally, except for good cause shown, motions to compel must be filed within 14 days of receiving an unsatisfactory response to a timely discovery request.

13)     Dispositive motions are due April 30, 2007.

14)     A final pretrial conference is scheduled for November 1, 2007 at 1:30 p.m. by video conference.  If the plaintiff is not incarcerated, he shall appear in person or by telephone.  The plaintiff must keep the court and the defendants informed of his current address and, if appearing at the final pretrial conference by phone, a phone number where he can be reached for the conference.  The proposed final pretrial order is due by October 25, 2007.

15)     A jury trial is sheduled for November 12, 2007, at 9:00 a.m., by personal appearance before the Court at 201 South Vine, Urbana, Illinois.

Entered this <u>12th</u> Day of <u>July</u>, 2006.

                                                       **s\Harold A. Baker**

                                         HAROLD A. BAKER
                                UNITED STATES DISTRICT JUDGE